And I'm gonna go ahead and call the final case, but I'll give everybody a chance to get packed up and then the next group to get settled. Our next and final case is Liberty Mutual versus State Farm. And we have Ms. Russo for the appellant and Mr. Rosen for the appellee. Elizabeth Russo B0799MC029630K v. Pero Family Farm Food Co., Ltd. May it please the court, Elizabeth Russo on behalf of the appellant, Cross Appellee State Farm Florida Insurance Company. I would like to focus my argument this morning on the first point we made in our briefing, subject to any questions the court has about any issues. But the reason for the focus is that if we are correct on this first point, then the bulk of the other issues raised in the appeal and the totality of the cross appeal no longer matter. And the point is about Liberty's failure to allocate the settlement amount that it seeks to recover from State Farm among claims that are covered and claims that are not covered. The Florida case law on this point is very straightforward and very uniform. As put succinctly by the middle district in the Bradfield versus Mid-Continent case, Florida law clearly requires the party seeking recovery to allocate any settlement amount between covered and non-covered claims. But counsel, aren't the cases that you're citing dealing with situations where none of the amounts were allocated? Here we do have an allocation all to one count. What case law do you have that tells us that that isn't satisfying the allocation requirement? I think that the point is that the law requires you to allocate amongst covered and non-covered claims. And the allocation here just allocated everything to a covered claim. Yeah, but why isn't that? I mean, I joined sort of Judge Branche's question. I don't understand why you can't allocate zero to some of the claims. I mean, perhaps you have an argument that the insurance company acted in bad faith or something. I mean, you're both insurance companies. But that they did something inappropriate in the allocation, but they clearly allocated, right? But the rule requires you to allocate between both the covered and the non-covered. But didn't they do that? They allocated to the covered claim. But that's not allocating amongst them because the whole point is that you can't recover from an insurance company unless there is coverage. But doesn't Florida give deference to settlement agreements following denial of coverage? If you look at the US Fire Insurance v. Hayden bonded storage, when an insurer refuses to provide a defense, leaving the insurer to its own resources, the insurer is bound by the terms of a negotiated settlement unless where the damages are covered by the policy, the insurer wrongfully refuses to defend and the settlement is reasonable, made in good faith. I mean, to Judge Brasher's point, you might come back and say bad faith. But why shouldn't we view that Florida would see this, Florida law would say that there is deference to this settlement? May I just make a remark about the failure to defend? I wanna quote from this court's decision in Spencer v. Assurance. Florida law clearly states that liability of an insurer depends on whether the insured's claim is within coverage of the policy. This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action. A determination of coverage, therefore, is a conditioned precedent to any recovery against the insurer. And that's the point of the, if there are covered and uncovered claims, the reason you have to allocate is because you're only entitled to recover for the covered claims. And you can't just, by sleight of hand, say well, I'm just going to allocate everything to the covered claim, even though there are pending claims, admittedly, against me for uncovered claims, so that I can recover everything from my insurer. That defeats the whole point of the rule. So why, I guess, and that's, that I think is the nub of the case. Why can't you do that? Why can't a defendant who the insured, who's their insurance company has declined to defend, the insurance company's saying we're not gonna defend, why can't they settle it and allocate? They have to allocate, but why can't they allocate to the, everything to the covered claim? Because of the problem with coverage, as they have to show that what they are recovering from the insurance company was covered by the policy. Right, but don't you do that by allocating the damages to the covered claim and then arguing about whether that claim is covered? No, absolutely not. But how do you do it? Because there are other claims, and Liberty has never claimed otherwise here. They admit that there are covers, I mean, that there are claims that are not covered. So, I mean, let me just give you this hypothetical. So here they allocated everything to the claim that they say is covered. What if they had allocated everything except for $5? Would that be a sufficient allocation in your mind? Well, actually, the Highlands holding cases  or give the court some means for determining whether your allocation makes some sense, which neither happened here. Well, so what about my hypothetical? What if they allocated? I mean, they did allocate in this case. What if they allocated and said, you know, let's say it's a case that's $100,000. They say, you know, $90,000 is to this covered claim and $10,000 is to everything else. Is that a problem? I think that that would be for the court to then determine, all right, does this allocation make sense? If you've got- Okay, so that's where I don't get. So what Florida law says that once there's an allocation, then what happens is then a court goes behind that and looks to see if that allocation is valid or appropriate or whatever language you wanna use. Where does that happen? I thought the point of the allocation was so that a court doesn't have to look at it and figure out how to allocate itself. I'm just saying that that's in the Highland Holdings case, they made reference to either allocate or give the court some reasonable means for- Right, and I'm saying so they do allocate, right? So in my hypothetical, they've allocated $90,000 to the covered claim, you know, $1,000, there are 10 other claims, $1,000 to each of those 10 other claims. What is a court supposed to do with that but just enforce it? I guess they would look at what the claims are and if they allocated the $10 to the fraud claim and everything else to negligence claims, there might be some question about that. Or it may be that there's actually some value that can be attached to different claims, like some damages or something. But we're not here because there wasn't anything of that sort done. Well, they allocated zero to the other claims, right? That's right, but I'm saying that you cannot do that and fulfill the spirit of the rule or the letter of the rule because you have to allocate something to the uncovered claims because you are not entitled to recover on those from the insurance company. So you can't just say, well, but I would like to recover everything from the insurance company, so I'll just allocate the whole settlement sum to a covered claim, even though I know that there are uncovered claims. You can't create coverage by your allocation process. So what is your authority that says a Florida court, we know Florida courts give deference to settlements. It's only if you say they have made this allocation, I guess, in bad faith, that a court goes behind. When does a court go behind what the parties have done? When does the deference end? Well, the rule is that if you do not allocate, then you may not recover. But they allocated here. So let's go back to Judge Brasher's hypothetical, $90,000 for the covered claim, 1,000 for the remaining claims, or $5 for each of the remaining claims, or they've equally allocated it. At what point in any of those situations, when does a court, when does a Florida court, do they always evaluate? And if so, what's the law that supports it? If they don't always evaluate an allocation, whether it was truly and fairly done, then when does that court come in? That's what we're trying to get at, is when does Florida, when does the deference end? Here we have an allocation. But what you don't have is an allocation amongst covered and uncovered claims, and that is the allocation that's required. But you do. You have to allocate it between them. But you have everything allocated to the covered claim, so you have zero to the uncovered claim. That's what you cannot do. And where is the law that says that? It's the law that says you must allocate between covered and uncovered claims, or you cannot recover at all. How do you square that with the language in Keller Industries that says that after allocation, the settlement or portions thereof were covered? Doesn't that mean the whole settlement can be covered the same way it was here? I'm sorry, can you read me that quote again? Keller Industries says that after allocation, the settlement or portions thereof were covered. Doesn't that suggest that the whole settlement, if it's either the settlement or portions thereof being covered, doesn't that suggest that there are two options? One is the whole settlement, and another is portions of the settlement? Well, yes, that's true. Sometimes all of the claims were covered. Sometimes some were not. But that's why you have to allocate. Well, but if you allocate all of it to one, then that would be the whole settlement, right? Well, that's what you can't do unless all your claims were covered. But to go back to Judge Brasher's question, at what point would you consider that the allocation has been done? So we have $100,000, $90,000 is tacked onto one, $1,000 to everything else. Has that been allocated? It has. So court doesn't look at that deference because it's been allocated. So same situation, bulk of the money goes to one covered count. The rest have $5. Has that all been allocated? Sorry. So you got one covered claim. The bulk of the settlement goes to that. Every other claim that's not covered is $5, $5, $5. Has that been allocated? All I can say is that the case law suggests there aren't any cases that directly address this that I've seen so far. But what they suggest is, look, either make your allocation or give us, the court, some feasible means of doing so, so we can tell what you're allocating to the covered claims and what you're allocating to the uncovered claims. I guess the reason we had this question is because it seems like what you're asking us to say, and correct me if I'm wrong, but it seems like what you're asking us to say is that whenever there's a zero, so if there's 10 claims in a complaint and there's a zero attributed to a claim, that that's not an allocation. Is that what you're saying? That's what I'm saying. Okay. If there are covered and uncovered claims, you can't apportion zero to the uncovered. Okay. Do you have a case that says that specifically? That you can't, you mean that you can't allocate the whole thing to a covered claim? No, that no claim, that when you do the allocation, you cannot allocate zero to any claims. I don't have a case that says that. I just, I have the general principle that you can only recover on the covered claims and not on uncovered claims, which is why you are required to allocate. I see my time is up. What about, let me ask you another question about that, if I can. Okay. If I can. So, I think, so I mean, okay, that's your argument. I mean, what about a case where, I mean, so in this case, you're really sort of saying they acted in bad faith that they did this for nefarious reasons. But you know, what about a case where someone has 10 claims against a defendant and five of those claims are just ridiculously frivolous, right? The claims are just silly. They're frivolous. I mean, you know, the person doesn't even have standing to bring them against the defendant. And so when they settle, they allocate zero to those claims because they're stupid. No one would allocate anything to those claims. Why can't they do that? Remember that the allocation part only affects the insurer because that's the one who's gonna be asked to pay it. The person who you're settling with doesn't care. They're getting the whole settlement amount regardless. So allocate away, whatever. It makes no difference to them. Who it makes a difference to is the insurer that you're trying to collect it from. Because, and the insurer, under the law, you have the burden of showing that all the claims were covered or that the ones that you allocated to were covered. But so, I mean, I just, I didn't answer my question. I mean, my question is, you know, in this, you're sort of insinuating that they have a bad faith reason for doing it, but what about somebody who has a really good faith reason? You know, they really sit down, they talk to their lawyers, and they say, we're really gonna try to allocate this settlement in an appropriate way where we give appropriate value as between these claims. You know, we have an economist who's gonna come in and evaluate the value of these claims, and then the economist says, assign zero to these claims because they're so frivolous, and put this other stuff on the other claims. Why can't you do that? Why is that not an allocation? Well, the question, though, is whether they're covered or not. Now, what the amount of- Yeah, well, yeah, so they would, I mean, so it's exactly like this case, right? Exactly like this case, except they do it in like super good faith, like the best good faith you could ever have, right? Like, you know, the Pope allocates the claims, okay? Why can't they allocate zero to one of the claims? That's not a covered claim, and everything goes to the claim that's covered. Why can't they do that? Because you have, because you have, the allocation is supposed to be between covered and uncovered claims, not frivolous or not frivolous. This really doesn't have to do with bad faith or good faith. It's just, you have to allocate between the covered and the non-covered. It's that simple. Okay. And if you don't, then you don't recover. What if some of the claims just aren't covered? Huh? What if some of the claims just aren't covered? In this case? Well, in a hypothetical. I always want to make sure I'm not asking to make a concession about your case, but. Okay, well, in this case, for example, there was a claim against them for fraud, and a claim against them for breach of their own homeowner's insurance contract. They assigned everything to a breach of an option to repair, a breach of a contract to repair is what they allocated the whole thing to. But those other two were clearly not covered. Not that it's our burden to show that. They have the burden to show that anything they seek to collect is covered. And those were not. And nothing was allocated to them. All right, thank you, Ms. Russo. You have three minutes for rebuttal. Mr. Rosen. Thank you, your honors. May it please the court, Jonathan Rosen on behalf of the Appalachian Cross Appellant Liberty Mutual, and I have with me today my trial counsel, my partner, Jeffrey Lappin, at the counsel table. To address really the only issue that came up today, the issue of allocation, the other thing I want to point out here is that, as your honors recognized, the insurance company who wrongfully fails to defend can still raise certain issues, even though they're bound by the settlement with respect to all other issues. They can challenge the reasonableness of the settlement. They can challenge coverage, which they're doing here, and they can also challenge bad faith. And critical to this issue is that State Farm had an opportunity, but did not challenge either reasonableness or bad faith. We have various stipulations that were filed in this case. There were stipulations on July 18, 2016. This is docket entry 71. It outlines what the legal issues are for determination and the fact issues for determination by the court. Reasonableness, not one of them. Bad faith, not one of them. Counsel for State Farm in the evidentiary hearing on damages held on January 23, 2020, docket entry 180, agreed that State Farm had stipulated to the reasonableness of the settlement. You also have a confidential stipulation that was filed before the damages hearing. And the reason that's important is because if State Farm had said, look, paying X number of dollars for this count too is unreasonable, then there'd be an argument, what they're really doing is paying for an uncovered claim, maybe. But they didn't do that. So if it's reasonable to pay X number of dollars for count two, then it really doesn't matter that we assign zero dollars to other claims, whether or not there was exposure for those claims. Because that doesn't affect State Farm. We're not trying to recover for these non-covered claims for count one, count three, count four against State Farm. It's just count two. If count two is reasonable, if the amount paid to resolve count two is reasonable, then it really doesn't matter that zero dollars was assigned. And as your honors pointed out, there is no case in Florida, in fact, there's no case in the nation that says that the court gets to come back in and analyze whether the allocation was reasonable or not. There is an allocation here, necessarily all, because it's all dollars to count two, that means zero dollars to every other count. There's no case that says it. In fact, the only case that addresses the issue squarely is the Shawnee case. And admittedly, it's a district court from Kansas applying Missouri law, but importantly, State Farm has identified no real substantive differences between the law of Florida and the law of Missouri when it comes to settlements. Both jurisdictions heavily favor settlements. We cited the Sun Microsystems case in Florida and Missouri, the same thing. And also the law and allocation isn't materially different in Missouri or in Florida. Is the case binding? Of course not. But it's still instructive, it's still persuasive, and it's the only case on point. So State Farm really has nothing in its pocket to suggest that the court gets to come back in and say, hey, we don't really like this allocation, we think it should have been allocated differently, especially when they stipulate to the reasonableness of the settlement and they don't challenge the bad faith. And that brings us to the next issue, which is coverage. I know they have an argument in their brief that the breach of contract claim can't be covered because under Florida law, breach of contract claims aren't covered. That's simply not accurate. We cited a Florida Supreme Court case involving a breach of contract, subcontractor's defective work, very similar to what we have here. And the Florida Supreme Court said, for unintentional breaches of contract, you certainly can have coverage. There is a case by this court that says, just because the breach of duty is rooted in a contract, this is the public risk management case, nothing in the city's policy suggests that a wrongful act cannot be rooted in a duty that the city has under a contract. To the contrary, the fact that paragraph I in section four's exclusions eliminates coverage for loss arising out of an intentional breach of contract establishes that unintentional breaches of contract can be covered. So there's a public policy, you don't want to allow insurance of wrongful behavior, of intentional misconduct. That makes sense, but an unintentional breach of contract can be covered. There's certainly no argument here that Liberty intentionally wanted Rightway to mess everything up with the repair of the home and in fact destroy the home instead of repairing it. I think Liberty had every interest in wanting this contract to be fulfilled, not breached. This was an unintentional breach of contract. This is the contractor negligently performing its work. And so there is coverage for count two. There's no question there was property damage here. There was substantial property damage. Multiple occurrences, it didn't all happen at once, it happened on different dates and that brings us into the issue about the limits of insurance. Different parts of the house were destroyed at different time. You know, you're free to go into all these other issues that didn't come up when she was doing her argument, but you're opening it up to her rebuttal, just pointing that out. Okay, understood, your honors. Let me focus on one issue that I do want to address because it came up in the reply brief and so we didn't have a chance to address it in our brief and there's an argument about the attorney's fees and that they didn't have the chance to make the argument because they didn't have the settlement agreement when the summary judgment briefing was done and State Farm did have many opportunities and had stipulations about issues after they had the unredacted settlement agreement that clearly showed there was an amount earmarked for attorney's fees. And so they did waive, they did not timely raise the argument before the trial court. They only raised it after liability and just to give your honors the chronology here, the settlement agreement was ordered to be produced at State Farm on March 7th, 2016. This is docket entry 63. We produced it, we had a confidentiality agreement. It was subject to confidentiality produced on June 14th, 2016. Then you've got a stipulation. This is the pre-trial stipulation about the issues of fact and law to be resolved at trial. Eight issues of law identified. Whether attorney's fees are covered, not one of them. They had the settlement agreement already. Then there's a second stipulation. September of 2016, September 12th, docket entry 75. The parties stipulate there are no fact issues to be tried and if Liberty's motion for partial summary judgment is granted, certain damage amounts need to be determined but the amounts are essentially already liquidated. The amounts that remain to be determined that weren't liquidated were the attorney's fees, Liberty's fees but there certainly wasn't any issue identified in that stipulation about coverage for attorney's fees. The important point here is that issue, this argument about whether attorney's fees are covered under the policy, that is an issue about liability. It's not a quantum of damages issue. The argument is that the fees aren't covered. Then we have an intervening appeal and in June and July of 2019, this is years later, the trial court finally does an analysis of the contractor's policy and rules in favor of Liberty Mutual and then it amends the order and State Farm moves for reconsideration of the order. This is the substantive issues about liability. June 27th, 2019, this is three years after they have the settlement agreement. There's no mention anywhere in that motion about whether the fees are covered under the policy. They certainly had an opportunity to do that. The first time the issue comes up is three and a half years after they have the settlement agreement. This is January 23rd, 2020. This is a hearing on damages. We're post liability here and they mention it just in passing in the hearing and then there's a post evidentiary hearing brief where they do brief the issue more substantially but in that briefing and even in the appeal, the thrust of the argument on fees, it's not that the fees generally are not recoverable because they're not property damage. They do cite authorities that say that but the thrust of the argument is, look, what really triggered the liability for fees is count one. Count one is breach of the insurance policy contract. That's not covered. So what the argument is, the thrust of the argument, it's a challenge to allocation and that's why we responded to it the way we did in the briefs and again, for the reasons that we've discussed ad nauseum today, State Farm can't challenge the allocation. There is an allocation. They wrongfully failed to defend. They didn't challenge reasonableness. They didn't make a bad faith case. They didn't present evidence. They didn't identify those as issues to be resolved by the court and so they can't come back in and say, well, we really think that Liberty had liability under count one because it made an underpayment and then acknowledged the underpayment. That was the thrust of the argument, that Liberty came in, sent a check for, I don't remember the exact amount but it wasn't a large check to the homeowners because they had made an underpayment. That's a confession. Judgment triggers fees under 627, 428. That's interesting and there is speculation that there might have been exposure under count one. That doesn't matter because they don't get to challenge the allocation. They didn't challenge reasonableness. They could have. They didn't. They're stuck with the allocation so they don't get to argue that the fees aren't covered under the policy because they're triggered by count one. That's a losing argument. There is law supporting the proposition that fees generally aren't considered property damage but that wasn't the thrust of the argument made and to the extent it was made at all, it was made too late. It was made after liability had already been determined by the district court. You have to preserve error for appeal. You have to timely make it before the trial court, not just make it after the trial court already determines liability for the settlement amount and they had every opportunity to do so. They may not have had the settlement agreement at the time of the summary judgment briefing but that summary judgment, those motions have been pending for years. We didn't get a ruling in our favor until 2019. They still didn't bring it up and so you have a waiver here and the other point I want to make is that even in the very beginning, liberties amended complaint alleges the allocation of the entire settlement payment to count two. Count two had a claim for attorney's fees as well. So from the get-go, state farms put on notice that there's a potential that some portion of that settlement payment would have been, I don't want to use the word allocated, earmarked to pay the homeowner's attorneys because they had a claim for fees back then but they didn't do anything about it. They didn't have the settlement agreement until later. That's true but even after they have the settlement agreement, they still don't raise the argument and for years go by and they don't raise it. They raise it in damages phase. That's too late. There's a waiver and I think that's the critical issue that I want to raise in my argument today. If the panel has any further questions for me, I'm happy to answer them. Otherwise, I would rest on our briefs. Thank you, Mr. Rosen. Ms. Russo, you have three minutes left for rebuttal. Thank you. As far as the, we did not disagree with the reasonableness of the amount that they settled for but as soon as we saw their settlement agreement, which they filed after the deadline for filing dispositive motions, and we saw that they had made this allocation, we immediately objected to that and have continuously objected to that ever since so it's not that we agreed that that allocation was fine. We did not. As far as the attorney's fee issue, I didn't get to address this in opening but one of the things that we have argued is that the very substantial amount that was paid in the settlement for attorney's fees to the homeowners, liberty paying it to its own homeowners, is not under the Florida law that we've cited considered damages that are recoverable from a liability insurer. As far as when we raised that, we had done the summary judgment briefing both parties had on coverage issues that you've seen in the briefs about whether an additional insured endorsement should be given effect and so on and so forth. When we got up towards trial, the trial court, we told the trial court we don't really have anything to try to do a trial so we filed a stipulation saying there are no fact issues to be tried. It's just you decide the coverage issues and then whatever the amounts are will either be decided by the court or by the parties later. It wasn't until we got to the damages phase of it that what amounts Liberty could recover became from their settlement agreement became relevant and we did bring it up and we did argue it and we said you don't get the attorney's fees. If I can go back though to the allocation point, I just caution that the reason behind the allocating as I've said is that you can't make an insurer pay non-covered claims, not by allocating everything to a covered claim or otherwise. That's the danger and the fundamental principle that's being protected here. So to say but all insureds when you make your settlements, if you want to get around that rule and make your insurer pay for uncovered claims, just allocate everything to the covered claim. That completely defeats the purpose of the rule and so we think that you should apply the allocation rule as written which is allocate between covered and non-covered the insurer has to pay the covereds, the non-covereds they don't have to pay. We would ask that you reverse and find that they're not entitled to recover the settlement amount from State Farm. Thank you very much. Thank you, thank you both. We have your case under submission and we are adjourned.